**J. PAUL MOORHEAD, State Bar # 240029**
  Email: moorhead@luch.com
**LAQUER, URBAN, CLIFFORD & HODGE LLP**
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Telephone: (626) 449-1882
Facsimile: (626) 449-1958

Counsel for Plaintiffs, Trustees of the
Directors Guild of America – Producer Health Plan, et al.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE DIRECTORS GUILD OF AMERICA – PRODUCER HEALTH PLAN; and TRUSTEES OF THE DIRECTORS GUILD OF AMERICA – PRODUCER PENSION PLANS,<br><br>            Plaintiffs,<br><br>     vs.<br><br>TOO MANY SNEAKERS, INC., a California corporation;<br><br>            Defendant. | Case No.:  2:18-cv-08361<br><br>**COMPLAINT FOR BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENTS, RELATED TRUST AGREEMENTS, AND SECTION 515 OF ERISA** |

Plaintiffs complain and allege as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction of this case pursuant to section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") [29 U.S.C. § 1132(e)(1)], which grants the United States District Court jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)] to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA.  Such jurisdiction exists without respect to the amount

in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA [29 U.S.C. § 1132(f)].

2. This Court also has jurisdiction of this case pursuant to section 301(a) of the Labor Management Relations Act of 1947 ("LMRA") [29 U.S.C. § 185(a)], which grants the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3. Pursuant to section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)] and section 301(a) of the LMRA [29 U.S.C. § 185(a)], this Court has personal jurisdiction over the Defendant, and venue is proper, in that this is the district in which the Plaintiffs' trust funds are administered and in which moneys are due and payable by Defendant to Plaintiffs.

4. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5. The Directors Guild of America – Producer Health Plan and the Directors Guild of America – Producer Pension Plans (collectively the "Plans") are express trusts created pursuant to written declarations of trust ("Trust Agreements") between the Directors Guild of America, Inc. ("DGA") and various employers in the motion picture and television production industry. The DGA is a labor organization representing employees in the motion picture and television business, an industry affecting commerce within the meaning of section 302 of the LMRA [29 U.S.C. § 186].

6. The Plans are maintained for the purpose of providing their participants and beneficiaries with medical and pension benefits. The Plans are now, and were at all times material to this action, "multiemployer plan[s]" within the meaning of section 3(37)(A) of ERISA [29 U.S.C. § 1002(37)(A)], and "trust fund[s]" within the meaning of section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)].

///

7. Plaintiffs are the trustees ("Trustees") of the Plans. The Trustees are "fiduciar[ies]" of the Plans as defined in section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)].

8. Plaintiffs are informed and believe, and thereon allege, that at all times material herein, Defendant Too Many Sneakers, Inc. ("Too Many Sneakers") has been a corporation organized and existing by virtue of the laws of the state of California, with its principal place of business located in Oregon.

9. Plaintiffs are informed and believe, and thereon allege, that at all times material herein, Too Many Sneakers has been an "employer" engaged in "commerce" and in an "industry affecting commerce," as those terms are defined and used in sections 501(1) and 501(3) of the LMRA [29 U.S.C. §§ 142(1), 142(3)], and within the meaning and use of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

## CLAIM FOR RELIEF

### Breach of Written Collective Bargaining Agreements, Trust Agreements, and Section 515 of ERISA

10. Plaintiffs hereby refer to, and incorporate herein, paragraphs 1 through 9 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

11. At all times material herein Too Many Sneakers was signatory to, and bound by, the terms and conditions of the National Commercial Agreement, as amended, and all extensions thereto or replacements thereof (collectively the "Commercial Agreement"). The Commercial Agreement is a written collective bargaining agreement by and among the DGA and the Association of Independent Commercial Producers. The Commercial Agreement incorporates by reference the terms and conditions of the Trust Agreements. Too Many Sneakers is now, and was at all times material to this action, bound to the Commercial Agreement and to the Trust Agreements.

///

1250571                                                                 Complaint

12. The Commercial Agreement and Trust Agreements require "employers," also referred to as "producers," to accurately report to the Plans on a timely basis (through "Report Forms"), the identities of employees performing work covered by the Commercial Agreement, the dates on which the employees performed this work, and the compensation paid to these employees. Based on this information, the employers/producers must pay the Plans fringe benefit contributions pursuant to the Commercial Agreement and Trust Agreements. These fringe benefit contributions are calculated based on a percentage of the compensation paid to employees.

13. Section 515 of ERISA [29 U.S.C. § 1145], provides "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

14. Too Many Sneakers is an "employer" and "producer" as defined in the Commercial Agreement, Trust Agreements and/or section 3(5) of ERISA [29 U.S.C. § 1002(5)]. Pursuant to the Commercial Agreement, Trust Agreements and section 515 of ERISA [29 U.S.C. § 1145], Too Many Sneakers was obligated to submit Report Forms to the Plans, and to make contributions to the Plans, in accordance with the terms and conditions of the Commercial Agreement and Trust Agreements.

15. Plaintiffs are informed and believe, and thereon allege, that at all times material herein, the corporate stock of Too Many Sneakers has been owned by Lionel Coleman and/or his spouse, and that Lionel Coleman has been Too Many Sneakers' Chief Executive Officer.

16. Plaintiffs are informed and believe, and thereon allege, that at all times material herein, Lionel Coleman has been a "Principal Director" of Too Many Sneakers, as that term is defined and understood in the Commercial Agreement.

///

///

17. Pursuant to the Commercial Agreement, Too Many Sneakers was obligated to report and pay fringe benefit contributions to the Plans based on the "total gross compensation" paid to Lionel Coleman.

18. The Commercial Agreement and Trust Agreements require employers and producers to maintain records with respect to each of their employees sufficient to determine the accurate amount of contributions that should have been paid to the Plans, and to permit the Trustees to conduct audits of these records in order to determine if contributions have been properly paid pursuant to the Commercial Agreement and Trust Agreements. Section 209 of ERISA [29 U.S.C. § 1059] provides that "[e]very employer shall … maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." Pursuant to the Commercial Agreement, the Trust Agreements and section 209 of ERISA [29 U.S.C. § 1059], Too Many Sneakers was obligated to: (A) maintain records sufficient to allow the Trustees to determine the accurate amount of contributions that should have been paid by Too Many Sneakers to the Plans, and the benefits due to the employees of Too Many Sneakers; and (B) permit the Trustees to conduct audits of these records.

19. In or around January 2018, the Trustees completed an audit of Too Many Sneakers' payroll and related records. This audit sought to determine if Too Many Sneakers had properly reported and paid fringe benefit contributions to the Plans from January 1, 2013 through December 31, 2016. Based on this audit, the Trustees determined that Too Many Sneakers failed to report and pay fringe benefit contributions to the Plans on all "total gross compensation" paid to Lionel Coleman. Pursuant to this audit, Too Many Sneakers owes the Plans at least $59,260.63 for unpaid fringe benefit contributions.

20. Too Many Sneakers' failure to pay the Plans these fringe benefit contributions is a breach of the Commercial Agreement, the Trust Agreements, and section 515 of ERISA [ 29 U.S.C. § 1145].

///

21. Plaintiffs are informed and believe, and thereon allege, that Too Many Sneakers owes, but has failed to pay additional amounts of fringe benefit contributions to the Plans, not presently known to the Trustees, to be established by proof.

22. Pursuant to the Commercial Agreement, Trust Agreements and section 502(g)(2)(C) of ERISA [29 U.S.C. § 1132(g)(2)(C)], Too Many Sneakers is obligated to pay to the Plans liquidated damages calculated at 20% of any unpaid fringe benefit contributions for the detriment caused by the failure of Too Many Sneakers to timely pay contributions. Too Many Sneakers owes the Plans at least $11,852.13 for liquidated damages. The exact amount of liquidated damages owed by Too Many Sneakers to the Plans will be established by proof.

23. Pursuant to the Commercial Agreement, Trust Agreements and section 502(g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(B)], Too Many Sneakers owes the Plans interest on all unpaid fringe benefit contributions from the dates the sums were originally due to the Plans until paid. The amount of said interest will be established by proof.

24. Pursuant to the Commercial Agreement, Trust Agreements and section 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)], Too Many Sneakers agreed that in the event of any delinquency, it would pay all legal and auditing costs in connection therewith, whether incurred before or after litigation is commenced. It has been necessary for Trustees to engage legal counsel and incur audit costs for the purpose of collecting said contributions and damages, and the Trustees are entitled to their reasonable attorneys' fees and audit costs in connection therewith. The exact amount of the legal fees and audit costs due and payable has not been ascertained at this time. These amounts shall be established by proof.

25. By the Commercial Agreement, Too Many Sneakers agreed that it may be required to post a performance bond in an amount sufficient to cover not only its obligations for contributions, but also a reasonable amount for attorneys' fees and other litigation expenses which might be incurred in the event of a delinquency. The Trustees

Case 2:18-cv-08361-DSF-GJS   Document 1   Filed 09/27/18   Page 7 of 8   Page ID #:7

are entitled to such bond from Too Many Sneakers, the amount of which will be established by proof.

26. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], the Court may grant such other legal or equitable relief as the Court deems appropriate. As part of the Trustees' judgment, the Trustees shall request the Court to:

A. Order Too Many Sneakers, and its representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

B. Order Too Many Sneakers, and its representatives, agents and associates, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Plans, in an amount determined by the Court to be appropriate;

C. Order the creation of a constructive trust on all applicable property, and order the transfer of the applicable property to the Plans; and

D. Order Too Many Sneakers, and its representatives, agents and associates, to pay to the Plans all amounts due the Plans, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, interest, legal fees, audit costs and other expenses and damages incurred.

## PRAYER

WHEREFORE, the Trustees pray for judgment as follows:

1. For unpaid fringe benefit contributions and other damages for breach of the Commercial Agreement, Trust Agreements and ERISA in amounts as proved;

2. For liquidated damages in amounts as proved;

3. For interest at the applicable rate on all amounts due from their respective due dates until paid;

4. For the Trustees' audit costs in amounts as proved;

5. For the Trustees' reasonable attorneys' fees in amounts as proved;

6. For costs of suit incurred herein; and;

7

1250571                                                                                           Complaint

    7.    For such additional relief as this Court deems just and proper, including, but not limited to, the following:

    A.    An Order directing Too Many Sneakers, its representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

    B.    An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to the Plans; and

    C.    An Order directing Too Many Sneakers, its representatives, agents and associates, to pay to the Plans all amounts due the Plans, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, interest, legal fees, audit fees and other expenses and damages incurred.

Dated: September 27, 2018    LAQUER, URBAN, CLIFFORD & HODGE LLP

By: */S/ - J. Paul Moorhead*
    J. Paul Moorhead
    Counsel for Plaintiffs, Trustees of the Directors Guild of America – Producer Health Plan and Trustees of the Directors Guild of America – Producer Pension Plans

**WAIVER OF JURY RIGHT**

Dated: September 27, 2018    LAQUER, URBAN, CLIFFORD & HODGE LLP

By: */S/ - J. Paul Moorhead*
    J. Paul Moorhead
    Counsel for Plaintiffs, Trustees of the Directors Guild of America – Producer Health Plan and Trustees of the Directors Guild of America – Producer Pension Plans

1250571    Complaint